UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAMONDRA TOWNSEND, JR.,

    Plaintiff,

   v.                                   CAUSE NO. 3:25cv445 DRL-SJF

TRUSTEES OF ELKHART AERIE 395
FRATERNAL ORDER OF EAGLES *et al.*,

    Defendants.

## OPINION AND ORDER

Lamondra Townsend, Jr. filed suit in state court, seeking several declarations against the Trustees of the Elkhart Aerie 395 Fraternal Order of Eagles, the organization's insurer (Scottsdale Insurance), and Saadallah Altameemi regarding the allocation of insurance coverage after a shooting at the Eagles club in which he says he was injured. Scottsdale removed. The court addresses two matters: Scottsdale's motion to realign the parties (which accompanied the removal notice) and Mr. Townsend's motion to remand (opposing realignment and joined by Mr. Altameemi). The court grants realignment and denies remand.

## BACKGROUND

In the late-night hours of April 16, 2022, a shooting occurred at the Eagles club. Messrs. Townsend and Altameemi allege they were injured, and each filed personal injury lawsuits against the Trustees in state court (on August 4, 2023 and February 1, 2024 respectively) [1 ¶ 1; 1-2; 7-2]. On April 24, 2025, Mr. Townsend filed this suit in Elkhart Superior Court seeking several declarations regarding the amount of insurance coverage and the proper allocation of proceeds [4]. Scottsdale removed this declaratory judgment action.

As alleged here, at the time of the shooting, the Trustees had an insurance policy with Scottsdale that had a general limit of liability of $1 million per occurrence and a $2 million aggregate limit [4 ¶ 6]. Mr. Townsend says Scottsdale is claiming that a sublimit of only $25,000 applies to his claim, and that Scottsdale is taking a similar position as to Mr. Altameemi's claim [*id.* ¶ 8, 12]. Mr. Townsend alleges that the Trustees hold the same sublimit positions as Scottsdale [*id.* ¶ 13]. Mr. Townsend thinks their positions on coverage are wrong.

Mr. Townsend also contends that his injuries and Mr. Altameemi's injuries might result from separate occurrences, as defined under the insurance policy [*id.* ¶ 21]. Mr. Townsend says Scottsdale's position is that their injuries resulted from only one occurrence under the policy, and that the Trustees agree with Scottsdale's position [*id.* ¶ 18-19]. According to Mr. Townsend, his claim exceeds $1 million [*id.* ¶ 20].

The policy reportedly includes an assault and battery limited liability coverage endorsement, which modifies certain liability limits [*id.* ¶ 31]. For claims arising from an assault or battery, the endorsement defines an "event" as "an act or series of acts based on or arising out of the same assault and/or battery" [*id.* ¶ 30]. According to Mr. Townsend, Scottsdale and the Trustees contend that the injuries to Mr. Townsend and Mr. Altameemi arose from a single "event" within the meaning of this endorsement such that the $25,000 sublimit applies to both claims [*id.* ¶ 29, 31]. Mr. Townsend disputes application of this endorsement [*id.* ¶ 32].

Mr. Townsend thus seeks a declaratory judgment in five seemingly alternative respects. In count one, he asks the court to declare (against Scottsdale and the Trustees) that his claim is not limited to the $25,000 sublimit, and instead the $1 million general limit applies [*id.* ¶ 16]. In count two, he seeks a declaration (against Scottsdale, the Trustees, and Mr. Altameemi) that the injuries

2

of both Mr. Townsend and Mr. Altameemi stemmed from separate occurrences such as to guide a proper allocation of insurance proceeds between the two men [*id.* ¶ 22]. In count three, Mr. Townsend requests a declaration (against Scottsdale, the Trustees, and Mr. Altameemi) regarding the allocation of insurance proceeds between him and Mr. Altameemi, "if the court finds that there was only one occurrence under the policy," based on a future controversy between the two men about the severity of their injuries and the extent of their damages [*id.* ¶ 24-27]. In count four, Mr. Townsend seeks a declaration (against Scottsdale, the Trustees, and Mr. Altameemi) that allocates proceeds between the two men "if the court decides that the endorsement applies and it also decides that both [Mr.] Townsend and [Mr.] Altameemi['s] injuries were from the same 'event'" [*id.* ¶ 36]. Finally, in count five, Mr. Townsend requests a declaration (against all) that the endorsement doesn't apply; that the injuries to Mr. Townsend and Mr. Altameemi were from separate "events" within the meaning of the endorsement; and that allocates proceeds between Mr. Townsend and Mr. Altameemi [*id.* ¶ 46].

Scottsdale timely removed the suit and filed a motion to realign the parties to establish diversity jurisdiction. The insurer argues that the interests of Mr. Altameemi and the Trustees are aligned with Mr. Townsend, and these parties should be treated functionally as "plaintiffs," with Scottsdale as the sole defendant. Mr. Townsend, Mr. Altameemi, and the Trustees are all citizens of Indiana, whereas Scottsdale is a citizen of Arizona and Ohio.[1] The amount in controversy seems satisfied. If Mr. Altameemi and the Trustees are realigned, only then will complete diversity

---

[1] Scottsdale's notice of removal has deficiencies, but the court has alternate sources of information to remedy the notice's shortcomings. Scottsdale asserts Mr. Townsend's and Mr. Altameemi's residences rather than their citizenship (domiciles), which aren't the same concept. *See Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 447 (7th Cir. 2000). Mr. Townsend's complaint nonetheless pleads both he and Mr. Altameemi are citizens of Indiana [4 ¶ 2, 10]. Scottsdale is a citizen of both Ohio (place of incorporation) and Arizona (its principal place of business).

3

exist, and Scottsdale can invoke diversity jurisdiction. Mr. Townsend and Mr. Altameemi both oppose removal and argue realignment is improper.

## STANDARD

For a case to be within the diversity jurisdiction of the federal courts, diversity of citizenship must be "complete," meaning that no plaintiff may be a citizen of the same state as any defendant. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). At the same time, a "party isn't permitted to destroy federal diversity jurisdiction by naming as a defendant someone against whom he doesn't seek relief." *R.C. Wegman Constr. Co. v. Admiral Ins.*, 629 F.3d 724, 726 (7th Cir. 2011).

The court has a duty to "look beyond the pleadings and to arrange the parties according to their true sides in the dispute," *Indianapolis*, 314 U.S. at 69—that is, whether their classification as plaintiffs and defendants "conforms with their true interests in the litigation," *Am. Motorists Ins. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981). The court may realign parties when no actual, substantial controversy exists between the parties on one side of the dispute and their named opponents. *Id.* Realignment is "improper when the court finds that an actual, substantial controversy exists on one side of the dispute and its named opponent." *Krueger v. Cartwright*, 996 F.2d 928, 932 n.5 (7th Cir. 1993).

DISCUSSION

A. *Citizenship of the "Eagles."*

As an initial matter, the parties debate Eagles's citizenship. As pointed out by Scottsdale, Mr. Townsend has not sued the organization but instead its Trustees. Scottsdale argues the Trustees are nominal parties or realignable. For his part, Mr. Townsend asserts unhelpfully that Eagles's citizenship is that of "everyone in the Eagles" and that its parent company "probably has control over it."

According to the Indiana Secretary of State, the Fraternal Order of Eagles Aerie #395 Corp is a domestic nonprofit corporation, but both parties instead call the organization an unincorporated association [7 ¶ 3].[2] If it had been sued in its own name as a nonprofit corporation, the rule governing corporations would apply. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016); *see also* Ind. Code § 23-17-4-2. And if in fact it was an unincorporated association at the time of removal, its membership would control the citizenship analysis. *See Americold*, 577 U.S. at 383.

But Mr. Townsend specifically named as defendants the Trustees, not the organization. "[W]hen a trustee files a lawsuit or is sued in [his or her] own name, [his or her] citizenship is all that matters for diversity purposes." *Id.* at 383. Scottsdale identifies the three trustees (all individuals by name) and states they are all citizens of Indiana [1 ¶ 9]. Mr. Townsend doesn't

---

[2] Query whether the Eagles may have been an unincorporated association at the time of the accident in April 2022 but not at the time of removal in May 2025. It appears the nonprofit corporate status of a same-named entity occurred on October 24, 2023, but Scottsdale reports that Eagles surrendered its charter, closed the club, and went into receivership in November 2023, so perhaps the records downstate relate to a new entity. The summons prepared by Mr. Townsend calls the nonprofit corporation an assumed name [34]. The court need not resolve these questions given this suit names only the Trustees. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 382-83 (2016). That said, the nonprofit corporation, per state records, was incorporated in Indiana with its principal place of business in Indiana, thereby making it an Indiana citizen even so.

contest this. Only their citizenship matters. They must be realigned, else Mr. Townsend's same Indiana citizenship would destroy diversity and result in the court lacking jurisdiction.

B.  *Realignment of Trustees.*

Scottsdale asks the court to treat the Trustees as nominal parties or to realign them. Scottsdale says the Trustees have no real interest in this fight—in other words, there is no actual or substantial controversy between Mr. Townsend and the Trustees with respect to the amount of insurance proceeds he might be able to use to satisfy any state court judgment entered in his negligence action. In arguing his interests and that of the Trustees are adverse such that realignment would be improper, Mr. Townsend highlights that the Trustees face tort liability in his underlying personal injury lawsuit. He sued the Trustees in the state action as well.

The diversity analysis excludes nominal parties, *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980); *Jimenez v. Kiefer*, 100 F.4th 931, 936 (7th Cir. 2024), but the Trustees cannot be fairly called nominal. A party is nominal when it "has no interest in the subject matter litigated"—that is, when its "relation to the suit is merely incidental and of no moment whether the one or the other side in the controversy succeeds." *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) (brackets and insertions omitted). "A defendant is nominal when (1) the plaintiff does not seek relief from him, or (2) there is no reasonable basis for predicting that he will be held liable." *Jimenez*, 100 F.4th at 936 (cleaned up). It may seem that way at first glance, but the Trustees—as the insureds [7 ¶ 6]—have as much interest as Mr. Townsend, if not more, in how much coverage might exist to pay any potential judgment in the underlying litigation. *See, e.g., Lusher St. Remediation Grp. v. N.H. Ins.*, 2021 U.S. Dist. LEXIS 146858, 6 (S.D. Ind. Aug. 4, 2021) (citing cases).

6

The possibility of tort liability in the underlying state action does not alone create a live controversy between Mr. Townsend and the Trustees in this separate declaratory action. The issue here is not whether the Trustees were negligent, but what amount of coverage might be applicable under Scottsdale's policy (given various hypothetical scenarios). The Trustees are the insureds under the insurance policy, and the coverage issues raised by Mr. Townsend concern the obligations of Scottsdale, not the Trustees. In fact, it would be in their interests for Scottsdale to satisfy any covered liability on their behalf—an interest that is aligned with Mr. Townsend's objective of maximizing available coverage. That remains true even if the Trustees have taken the same position on coverage as Scottsdale; after all, they ultimately aren't the final say on coverage and their personal liability would be reduced, in the face of an alleged $1 million claim, if, instead of a mere $25,000 sublimit, coverage turns out to be more. *See Davis v. Carey*, 149 F. Supp.2d 593, 595-96 (S.D. Ind. 2001) (Tinder, J.) (concluding insured and injured party's interests were aligned in seeking coverage to satisfy judgment against insured, so realignment was proper and remand was denied because "it certainly is in [insured's] interest to have [insurer] pay on the policy, thus reducing [insured's] personal liability); *Ferraro v. Humphrey*, 2015 U.S. Dist. LEXIS 18983, 9-10 (N.D. Ind. Feb. 18, 2015) (same); *see also Home Ins. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) (district court erred in aligning insured with insurer rather than with injured party because "the normal alignment of parties in a suit seeking a declaratory judgment of noncoverage is [i]nsurer versus [i]nsured and [i]njured [p]arty"); *Visteon Corp. v. Nat'l Union Fire Ins. of Pittsburgh, Pa.*, 2011 U.S. Dist. LEXIS 140181, 14 (S.D. Ind. Oct. 13, 2011), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 139909 (S.D. Ind. Dec. 5, 2011) ("any finding that the insurers owe a duty

to indemnify [the insured] is mutually beneficial to the [insured] and [the injured party] and does not amount to a controversy").

The Trustees are thus properly realigned with Mr. Townsend in this declaratory judgment action about Scottdale's insurance obligations. That recasts all Indiana citizens together, leaving Mr. Altameemi for discussion.

C. *Realignment of Mr. Altameemi.*

Scottsdale asserts there is no present controversy—and may never be an actual or substantial controversy—between Mr. Townsend and Mr. Altameemi because no liability against the Trustees has been established in either of their underlying tort suits. Scottsdale seeks to realign Mr. Altameemi as a plaintiff. In opposition, Mr. Townsend argues that both men could be claimants to a single pot of insurance proceeds. Mr. Altameemi sees the same dispute in his own counterclaim (albeit not yet filed separately on the docket). Perhaps not quite cast this way, they say nonetheless that they are adverse—no different than interpleaded defendants competing over an escrow, dueling beneficiaries competing over an estate's corpus, or an intervening party requesting the same proceeds as the original plaintiff. *See, e.g., PMC Cas. Corp. v. Va. Sur. Co.*, 2025 U.S. Dist. LEXIS 117039, 17-20 (N.D. Ill. June 19, 2025) (two companies competing over reinsurance benefits presented an actual and substantial controversy); *Schuld v. Thodos*, 2022 U.S. Dist. LEXIS 54052, 13-14 (N.D. Ill. Mar. 25, 2022) ("If they're *adverse*, they have to be *diverse*.").

Mr. Townsend's contentions rest on some real contingencies about future judgments in the two state suits and an eventuality of future damage allocation between him and Mr. Altameemi. It seems Mr. Townsend may have just enough standing to secure the court's Article III jurisdiction in at least one respect, *see Bankers Tr. v. Old Republic Ins.*, 959 F.2d 677, 680-82 (7th

Cir. 1992); *see also Weist v. Dawn*, 2 N.E.3d 65, 68 (Ind. Ct. App. 2014), appreciating that standing is decided claim-by-claim, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("must demonstrate standing for each claim [he] press[es] and for each form of relief [he] seek[s]" and "at all stages of litigation").[3] For a case or controversy even to exist, a plaintiff must have standing—an injury, fairly traceable to the defendant's conduct, that the court's decision will likely redress. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "The Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. 659, 672 (2021). "At a minimum, this means that the dispute must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quotations and citation omitted).

One controlling matter in dispute is whether the policy's general limit or some lower sublimit applies. There is something concrete and particularized, rather than merely conjectural, about this claim. *See Spokeo*, 578 U.S. at 340; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S 167, 180-81 (2000). Mr. Townsend is not a disinterested observer of the policy, but an alleged victim in the underlying suit. Once injured, he obtained a "legally protectable interest in that policy before he has reduced his tort claim to judgment." *Bankers Tr.*, 959 F.2d at 682. As pleaded, Scottsdale already communicated that a $25,000 sublimit applies. For a claim reportedly worth $1 million, against an organization shuttered and in receivership, the coverage limit presents a real controversy that easily would affect the approach in the underlying state case. It just so happens that Mr. Townsend and Mr. Altameemi are fully aligned on that initial question

---

[3] The court has an independent obligation to ensure its subject matter jurisdiction.

too. Both stand to benefit from a determination that a higher coverage limit applies, and both would be constrained by an opposite finding. Similarly, both would benefit from a declaration that their injuries stemmed from two occurrences under Scottsdale's policy rather than just one.

But Mr. Townsend pleads an array of alternative hypotheticals that may or may not materialize as concerns for declaratory judgment—not just if this, then that, but if this, and if this, and if this too, then that. The only real adversity Mr. Townsend posits with Mr. Altameemi concerns the apportionment of insurance proceeds in the event both secure judgments against the Trustees, in the event they are deemed to have been injured by only one occurrence, and in the added event their two damage awards exceed the policy's coverage limit.[4] The court has true reservations whether this might qualify for Article III standing; but, even if *Bankers Trust* could be extended this far, one would be hard-pressed to call such a claim jurisdictionally ripe, much less to call it an actual and substantial controversy existing between the two at the time of removal.

Ripeness gives effect to Article III's case-or-controversy requirement by "preventing the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021) (quotations and citation omitted). Ripeness is "peculiarly a question of timing" that evaluates "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* This is altogether separate from the discretion the court retains to decline jurisdiction or stay a case in certain circumstances under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a); *see, e.g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S.

---

[4] A review of the state court dockets in both Mr. Townsend's (20D02-2308-CT-000224) and Mr. Altameemi's (20D02-2402-CT-000028) tort suits shows both still pend without judgments—both at the time of removal and today. *See In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions).

491, 494 (1942); *Envision Healthcare, Inc. v. PreferredOne Ins.*, 604 F.3d 983, 986 (7th Cir. 2010); *Ray v. Bedi Tr.*, 611 F. Supp.3d 567, 577-78 (N.D. Ind. 2020). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). When an injury "depend[s] on so many future events that a judicial opinion would be advice about remote contingencies," ripeness presents a jurisdictional issue. *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006).

This all is to say the court harbors legitimate concerns whether jurisdiction even exists over Mr. Townsend's last claim about the allocation of proceeds, contingent as it is on yet-to-be-decided future events and subject to ongoing state proceedings still in the throes of discovery. But suppose Mr. Townsend somehow could convince the court of his standing, and suppose he somehow could convince the court of the issue's ripeness, it seems rather inevitable from there to conclude that it fails to present an actual and substantial controversy between him and Mr. Altameemi now. What qualifies as an actual controversy is one of degree, *see Trane*, 657 F.2d at 151 ("The propriety of alignment is a matter not determined by mechanical rules, but rather by pragmatic review of the principal purpose of the action and the controlling matter in dispute."); *cf. Bankers Tr.*, 959 F.2d at 681, but there is nothing truly substantial about this remote question about the allocation of damages. At the time of removal, Mr. Altameemi shared the same interest as Mr. Townsend in maximizing coverage for the Trustees through Scottsdale's policy, but nothing really more of moment.

Mr. Townsend relies on *Trane* to argue that Mr. Altameemi is adverse because the two may ultimately compete for a finite pool of insurance proceeds. *Trane* concerned two insurers

11

that, though sharing a general interest in avoiding liability on an underlying claim, had a direct and present conflict over which one had the duty to defend the insured. *Trane*, 657 F.2d at 150. That was a present and substantial controversy squarely before the court (which made realignment in that case improper) in a way that this last issue today is not. *Id.* at 150-51. In *Trane*, the question of the duty to defend was very much ripe and substantial because the underlying state action had settled. *See id.* at 149. Indeed, it may have been ripe even while the state action still pended, for the duty to defend concerned the case's defense and the ongoing costs of the underlying action. Mr. Townsend leapfrogs all this, other issues of underlying liability (based, as it is in his tort suit, on four different theories of negligence), and then coverage to reach not just a question of indemnity, but the allocation of proceeds for two prevailing tort claimants. Generally, a declaratory judgment seeking indemnity does not present a substantial controversy until a finding of liability in the underlying action. *See, e.g., Solo Cup Co. v. Federal Ins*, 619 F.2d 1178, 1189 (7th Cir. 1980); *Molex Inc. v. Wyler*, 334 F. Supp.2d 1083, 1088 (N.D. Ill. 2004). How truer this must be when the hypothetical issue rests on two findings of liability because only then would indemnity and proceed allocation arise in Mr. Townsend's theorized universe.

The focus today remains on "the points of substantial antagonism" between the alleged adversaries, not where they align. *Wolf v. Kennelly*, 574 F.3d 406, 412 (7th Cir. 2009). There need only be one actual and substantial controversy. There is none. Either the two men are aligned in interest, or the issue proves too remote to be considered a qualifying controversy. Accordingly, the court must realign Mr. Altameemi as a plaintiff. This means the court has diversity jurisdiction (over at least one claim) because all plaintiffs, both named and realigned, are Indiana citizens and

12

because the sole real defendant (Scottsdale) is a citizen of both Ohio and Arizona. The court thus grants Scottsdale's motion to realign the parties for jurisdictional purposes.

    D. *Argued Deficiencies in Removal.*

Knocked down but not out, Mr. Townsend contends that the court should nonetheless remand the case because of certain deficiencies in Scottsdale's removal. First, he says Scottsdale never procured consent from the other defendants to removal. *See* 28 U.S.C. § 1446(b)(2)(A). This argument stumbles once these parties have been realigned in interest as plaintiffs rather than as defendants, as they have today. Parties who are realigned as plaintiffs are not "defendants" who must give consent to perfect removal under § 1446(b)(2)(A). *See Ryan v. State Bd. of Elections*, 661 F.2d 1130, 1134 (7th Cir. 1981) ("Only indispensable defendants are required to join the petition for removal[.]"); *see, e.g., Taylor v. Peters (In re Yasmin & Yaz Mktg., Sales Practices & Prods. Liab. Litig.)*, 2011 U.S. Dist. LEXIS 78592, 14 (S.D. Ill. July 20, 2011) (consent not required from defendant realigned as plaintiff). In addition, the Trustees had not been served at the time of removal, so their consent was not required. *See* 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been properly joined and served must join in or consent to the removal of the action"); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993), *overruled on other grounds*, *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) (likewise tracking statute's language).

Second, Mr. Townsend says Scottsdale failed to state that it provided notice of removal to the Trustees, as one of "all adverse parties." 28 U.S.C. § 1446(d). Scottsdale doesn't seem to contest this, though its notice of removal reported that it "will serve a copy of this notice on all parties to the removed action" [1 ¶ 13]. In any event, any misstep that may have occurred here would be an insubstantial procedural one, not a jurisdictional one. An inconsequential defect in

removal papers doesn't deprive the court of jurisdiction. And "[r]emand would be a disproportionate sanction for a trivial oversight, and when judges measure out sanctions [striving] for proportionality." *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). Mr. Townsend recently filed a return of service on the Eagles organization, seemingly signed by one of the Trustees. Even if the court were to treat Scottsdale's omission as one in fact and then as a material one, Mr. Townsend is effectively asserting a procedural right for the Trustees—something the Trustees could invoke had they wished to challenge removal after service. Because the Trustees have not, the court sees no basis to remand on this ground.

Third, Mr. Townsend says remand is warranted because Scottsdale failed to include the full state court record in its notice of removal. *See* 28 U.S.C. § 1446(a). Mr. Townsend points to an exhibit originally appended to Mr. Townsend's complaint and Mr. Altameemi's answer, counterclaim, and crossclaim, filed the same day Scottsdale removed this case. *See Walton*, 643 F.3d at 999. The missing exhibit has since been filed on the docket, curing any omission. And a comparison of the federal and state court docket reveals Scottsdale filed its notice of removal to federal court an hour before Mr. Altameemi filed his responsive pleading in state court—thus, that filing wasn't even part of the state court record available to Scottsdale at the time it removed the case. Neither supposed omission has impaired this court's ability to adjudicate the case, making both inconsequential for purposes of § 1446(a). Indeed, the court has accounted for the counterclaim today. The court will order the counterclaim separately filed to perfect the docket.

## CONCLUSION

Accordingly, the court GRANTS Scottsdale Insurance Company's motion for realignment [1], DENIES Lamondra Townsend, Jr.'s motion to remand [10], DIRECTS the

realignment of the Trustees of Elkhart Aerie 395 Fraternal Order of Eagles and Saadallah Altameemi from defendants to plaintiffs, ORDERS the clerk to file the counterclaim by Mr. Altameemi separately on the docket [11-1], and ORDERS responses to be filed to the two pending motions [17 and 19] in accordance with local rule running from the date of this order, with any replies governed likewise by local rule.

SO ORDERED.

October 22, 2025                         *s/ Damon R. Leichty*
                                         Judge, United States District Court